IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **ACC CONSTRUCTION CO., INC.,** *as assignee of Jerry Herron d/b/a HHH Building Sales,*<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**ROBERTSON-CECO II CORPORATION, d/b/a CECO BUILDING SYSTEMS,**<br><br>    *Defendant.* | **CIVIL ACTION NO.**<br>**5:23-cv-00356-TES** |

**ORDER**

Before the Court are Defendant Robertson-CECO II Corporation's ("CECO")

Motion in Limine to Preclude the Admission of Irrelevant Damages Evidence [Doc. 89],

and Plaintiff ACC Construction Company's ("ACC") Motion in Limine to Preclude

Arguments, Evidence, or Instruction Based on Set-Off and Recoupment [Doc. 93]. The

parties filed five total Motions in Limine. The Court held a hearing on March 19, 2026,

where it ruled on three of the Motions. [Doc. 98]. Only the two Motions before the Court

remain. During the hearing, the Court instructed the parties to file ten-page briefs on

these motions. [Doc. 98]. The parties have done so. [Doc. 101]; [Doc. 102]. Therefore, the

Motions in Limine are ripe for review. As explained in further detail below, the Court

**GRANTS** CECO's Motion [Doc. 89] and **GRANTS** ACC's Motion [Doc. 93].

## BACKGROUND

### 1.    Factual Background

For an extensive factual background, see the Court's Omnibus Order. [Doc. 87].

Here is a brief summary. In 2022, the United States Army Corps of Engineers

("USACE") issued a Request for Proposal ("RFP") for a construction project on Robins

Air Force Base in Warner Robins, Georgia (the "Robins Project"). [Doc. 57, ¶ 5]. ACC

called former Defendant Jerry Herron d/b/a HHH Building Sales ("HHH") about the

buildings for the Robins Project. [McKnight Depo., pp. 30:16–24, 33:1]. HHH is an

authorized CECO builder, meaning he can order and erect CECO's pre-engineered

metal buildings ("PEMB"). [Herron Depo. I, pp. 14–17];[1] [Doc. 69-1]. At ACC's

prompting, HHH submitted a bid on November 16, 2022, to ACC. [McKnight Depo.,

pp. 35:20–36:3]; [Doc. 71-2].

To create its November 16, 2022, bid, HHH reached out to CECO for estimates on

the PEMB. [Herron Depo. I, pp. 42:20–43:11]. CECO sent HHH its estimates, then HHH

created its bid and sent it to ACC. [*Id.* at pp. 53:15–54:7]. Specifically, CECO submitted

its PEMB estimate on November 15, 2022, for $3,937,975.50. [Doc. 70-15, p. 2]. HHH then

rolled the CECO PEMB estimate into the bid they submitted to ACC which included

---

[1] For purposes of this Order, "Herron Depo. I" refers to the first deposition of Jerry Herron taken January 15, 2025. [Doc. 70]. "Herron Depo. II" refers to the second deposition of Jerry Herron taken September 10, 2025. [Doc. 69].

other materials to erect the PEMB, totaling $4,134,874.28.[2] [Doc. 71-2]. ACC used HHH's

bid to help create its bid for the USACE. [Doc. 70-7, p. 1]; [Doc. 70-5, p. 1].

ACC sent HHH a letter awarding HHH the PEMB portion of the project. [Doc.

71-2]. That same day, CECO emailed HHH saying that it could "hold the current

pricing on this project" if the order was entered by January 19, 2023, and there were no

significant changes to the building. [Doc. 71-7, p. 16]. HHH forwarded that email to

ACC. [*Id.*]. Seven days later, the USACE sent ACC a letter awarding ACC the Robins

Project. [Doc. 71-9]. Sometime between January 25, 2023, and February 3, 2023, CECO

noticed a problem with its bid calculations. [Doc. 70-5, pp. 5–6]. HHH emailed ACC

stating that neither HHH nor CECO "will be able to honor the new quote price" past

5:00 p.m. that same day. [Doc. 70-14]. ACC ended up getting the PEMB through Vulcan

for $9,691,742.00, and having L and G erect the building. [McKnight Depo., p. 126:4–8];

[Doc. 57, ¶¶ 54–56].

2.      **Procedural History**

ACC filed a Complaint [Doc. 1], asserting claims for breach of contract,

promissory estoppel, negligence, declaratory judgment, and attorneys' fees against

multiple Defendants. ACC settled its claims with Defendants HHH, H3Co Systems

---

[2] HHH did not just submit a bid for the PEMB materials. As part of its bid, HHH included labor to erect the PEMB, and then material and labor costs for a "[b]id [o]ption" titled "idle bay." [Doc. 71-2]. In total, HHH bid $10,797,324.54. [*Id.*].

LLC, and Southern Brothers Ironworks LLC, but was unable to resolve its dispute with CECO. [Doc. 45, ¶ 46]. On motion by ACC, the Court dismissed ACC's claims against HHH, H3Co Systems, and Southern Brothers Ironworks. [Doc. 38]; [Doc. 39]. As part of the settlement, HHH assigned any legal claims it might have against CECO to ACC. [Doc. 45, ¶ 46].

After ACC filed an Amended Complaint, CECO filed an Answer adding "crossclaims" against HHH for breach of contract, failure to defend and indemnify, and contribution. [Doc. 43]. On July 1, 2025, ACC moved to dismiss CECO's crossclaims. [Doc. 45]. CECO responded by filing a Motion to Amend [Doc. 48].[3] The Court granted CECO's Motion to Amend. [Doc. 55]. Both parties subsequently filed amended documents. [Doc. 56]; [Doc. 57]; [Doc. 58]; [Doc. 59].

CECO filed a Motion for Summary Judgment on October 1, 2025. [Doc. 66]. ACC filed its own Motion for Summary Judgment the same day, along with a *Daubert* Motion. [Doc. 72]; [Doc. 74]. CECO followed with a Motion to Strike. [Doc. 83]. The Court denied in part ACC's *Daubert Motion*, granted CECO's Motion to Strike, granted in part CECO's Motion for Summary Judgment, and granted ACC's Motion for Summary Judgment. [Doc. 87, p. 46]. The Motions in Limine followed, which the Court addresses here.

---

[3] The same day, CECO filed an Amended Answer and Counterclaim [Doc. 49], which the Court struck as premature since ACC had not consented and the Court had not ruled on CECO's Motion to Amend. [Doc. 50].

**DISCUSSION**

The Court takes the Motions in Limine in order, starting with CECO's Motion to Preclude the Admission of Irrelevant Damages Evidence. [Doc. 89]. As discussed at the hearing on March 19, 2026, the question with this Motion is whether ACC standing in the shoes of HHH can recover the $3,900,000 ACC claims HHH was potentially exposed to by CECO's alleged breach. CECO argues that the only remedy available to ACC—standing in the shoes of HHH—for its breach of contract claim is consequential damages capped at HHH's four percent profit loss. [Doc. 101, pp. 2–3]. On the other hand, ACC argues that consequential damages in Georgia include damages the seller had reason to know of at the time of contracting with the buyer. [Doc. 102, p. 7 n.1]. ACC also argues that consequential damages in Georgia includes attorney's fees. [*Id.* at p. 9].

Under Georgia law, consequential damages for the seller's breach include "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason know and which could not reasonably be prevented by cover or otherwise[.]" O.C.G.A. § 11-2-715(2)(a). Comment two in § 11-2-715(2)(a) rephrases this definition. It says that "the seller [is] liable for all consequential damages of which he had 'reason to know' in advance," but "the liberality of that rule is modified by refusing to permit recovery unless the buyer could not reasonably have prevented the loss by cover or otherwise." *Id.* at cmt. 2. Does this include damages that

the seller's breach *could have* caused the buyer? To support its affirmative answer to that question, ACC reaches back to the 19th century and cites *Wappoo Mills v. Commercial Guano Co.*, 18 S.E. 308 (Ga. 1893). [Doc. 102, p. 7].

But, *Wappoo* does not support ACC's assertion. 18 S.E. 308. The trial court in *Wappoo* gave the following jury instruction: "You have the right to include what [the buyer] may have been compelled to pay out, or what it may have lost in the way of profit, if it be shown to you in figures what such payment or loss is." *Id.* According to the Georgia Supreme Court, "what [the buyer] may have been compelled to pay out" means "the amount which the [buyer] was required to pay *and did pay* to its own vendee in the contract of resale, by reason of its inability to perform that contract, in consequence of nonperformance by the Wappoo Mills of its contract with the [buyer]." *Id.* (emphasis added). The jury instructions were not for hypothetical damages, but rather for actual damages[4] the buyer incurred, and lost profits. Furthermore, the court held that the "general rule"—the difference between purchase price and market price for the nondelivered goods—"excludes any addition to the damages by reason of payments, voluntary or involuntary, made on contracts of resale, as the result of a breach thereof occasioned by an antecedent breach of the original contract of sale." *Id.* at 309.

---

[4] Indeed, the buyer in *Wappoo* was forced to pay its customer (the resale buyer) $135 for the seller's breach of contract. 1893 Ga. LEXIS 335, *1–2.

*Wappoo* does not support the argument that ACC may recover for the damages that HHH "could have been compelled to pay its vendor, ACC, upon" CECO's alleged breach. [Doc. 102, p. 7]. Furthermore, unlike the buyer in *Wappoo*, HHH never paid ACC any damages. In fact, ACC paid HHH to settle their dispute. [Doc. 37-4, p. 1]. With no other legal foundation in support of ACC's position, ACC cannot recover the damages HHH "could have been compelled to pay." *Cf.* O.C.G.A. § 13-6-1 ("Damages are given as compensation for the injury sustained as a result of the breach of contract.").

Consequential damages in this case also do not include attorney's fees. ACC cites *Alterman Foods, Inc. v. G.C.C. Beverages, Inc.*, 310 S.E.2d 755 (Ga. Ct. App. 1983), to support its argument that attorney's fees are recoverable as consequential damages in Georgia. [Doc. 102, p. 8]. But *Alterman* cannot support this assertion. Immediately after laying out its rule that a buyer can recover litigation expenses from a seller of defective merchandise, the court in *Alterman* said that "this holding is restricted to the facts of this case." 310 S.E.2d at 758. *Alterman* dealt with the seller's breach of an implied warranty by delivering defective goods, which is distinguishable from the case at hand where CECO did not deliver anything. *Id.* at 756. As the Court previously ruled, ACC may recover attorney's fees if it can show bad faith, but cannot recover them as part of consequential damages. [Doc. 57, p. 15]; O.C.G.A. § 13-6-11. Therefore, the Court **GRANTS** CECO's Motion. [Doc. 89].

Next, ACC's Motion to Preclude Arguments, Evidence, or Instructions Based on

Set-Off and Recoupment.[5] [Doc. 93]. In support, ACC makes several arguments based on procedure and equity. [Doc. 102, pp. 2–6]. CECO responds by pointing to caselaw from other states that allowed parties to bring set-off claims against assignees. [Doc. 101, pp. 7–8]. CECO also argues that ACC took on HHH's claims subject to any applicable defenses. [*Id.* at pp. 8–10].

As the Court stated in its Omnibus Order, under Georgia law "an assignee takes whatever the assignment contract assigns subject to the limitations and defects of the assigned thing in the hands of the assignor." [Doc. 87, p. 41]. This includes defenses against the assignor. *Arriola v. Coleman,* 915 S.E.2d 404, 407–08 (Ga. Ct. App. 2025). But, set-off "must be asserted as a counterclaim rather than as a defense." *Peterson v. Peterson*, 923 S.E.2d 1, 6 (Ga. Ct. App. 2025), *reconsideration denied* (Nov. 18, 2025) (quoting *Stewart v. Stewart*, 511 S.E.2d 919, 920 (Ga. Ct. App. 1999)). CECO cannot assert the defense of set-off because set-off is not a defense in Georgia.

Next, CECO pointed to caselaw from other states that subjected assignees to set-off claims. [Doc. 101, pp. 7–8]. But, "CECO . . . found no case directly on point under Georgia law . . . ." [*Id.*]. Absent such, the Court will not hold that assignees are subject to set-off claims under Georgia law.

---

[5] For the sake of simplicity, the Court will only refer to set-off. Recoupment is also a counterclaim under Georgia law, so it is subject to the same analysis. *See RES-GA SCL, LLC v. Stonecrest Land, LLC,* 776 S.E.2d 489, 497 (2015) ("both setoff and recoupment are considered counterclaims") (quoting *Hill v. Green Tree Servicing,* 633 S.E.2d 451 (Ga. Ct. App. 2006)).

Finally, at the Court's previous hearing, CECO argued that the Court should convert its "defense" to a counterclaim "in the interest of justice." [Doc. 100, p. 74:17–22]. It specifically asked the Court to do so under Federal Rule of Civil Procedure 8, which says that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated . . . ." Fed. R. Civ. P. 8(c)(2). ACC said that the Court should not treat CECO's set-off "defense" as a counterclaim because CECO did not mistakenly plead it as a defense. [Doc. 102, pp. 2–3]. ACC presents its argument under Georgia's Civil Practice Act, which allows a court to "treat the pleadings as if there had been a proper designation" when "a party mistakenly designate[s] a defense as a counterclaim or a counterclaim as a defense . . . if justice so requires." O.C.G.A. § 9-11-8(c). Both require a mistake in pleading and qualify the change based on whether justice requires it, so the analysis is the same.

ACC's argument that CECO did not make a mistake is compelling. The Court touched on similar reasoning in its Omnibus Order when it said CECO didn't bring claims against HHH before HHH's dismissed from the lawsuit and also didn't bring third-party claims against HHH at any point. [Doc. 87, p. 45]. But, the Court can grant ACC's Motion in Limine without deciding whether CECO's pleadings were a strategy or mistake. The reality is, HHH is no longer part of this lawsuit. If CECO acted deliberately as ACC asserts, then it has not asserted set-off in the correct form—a

9

counterclaim—and is barred from continuing to try to assert it here. If CECO truly was mistaken as CECO asserts, it would still have to assert the counterclaim against HHH, which it did not do before HHH's dismissal from the lawsuit. Consequently, it cannot now do so against ACC, just like the other counterclaims addressed in the Omnibus Order. [Doc. 87, p. 45]. Furthermore, if CECO truly was mistaken, justice does not require the Court to convert CECO's set-off defense to a counterclaim because CECO can bring a separate action against HHH, including an action under the Builder Agreement's indemnification provision.

CECO has also pointed to the indemnification provision in its Builder Agreement with HHH as a reason why it should be allowed to bring a set-off claim against ACC. [Doc. 101, p. 10]; [Doc. 69-1, p. 3 ("[HHH] agree[s] to indemnify, hold harmless, and assume complete defense of CBS, its agents and employees . . . .")]. The Court previously addressed the indemnification provision in its Omnibus Order, stating that ACC did not take on HHH's contractual obligations.[6] [Doc. 87, p. 43]. Indeed, the

---

[6] Despite stating that it does not challenge the Court's holding in its Omnibus Order, CECO argues that ACC took on all HHH obligations under an alleged contract. [Doc. 101, p. 9]. In making that argument, CECO relies on O.C.G.A. § 11-2-210(5), which says that "[a]n assignment of 'the contract' or all 'of my rights under the contract' or an assignment in similar general terms is an assignment of rights unless the language or the circumstances . . . indicate to the contrary . . . ." § 11-2-210(5); [Doc. 101, p. 8]. But, the Settlement and Assignment Agreement here does not purport to assign general rights under a contract. [Doc. 72-11, pp. 1–2]. Instead, it assigns all "rights, title and interest in" all of HHH's "claims, demands, rights, causes of action, or suits . . . ." against CECO. [*Id.*]. In other words, it is an assignment of causes of action, not an assignment of a contract and § 11-2-210(5) does not apply. Even if it was an assignment of a contract, it could not be an assignment of the Builder Agreement because that contract has a no-assignment provision, leaving just the alleged subcontract agreement. That would leave us back at square one: ACC may be subject to CECO's defenses, but set-off and recoupment are not defenses; CECO did not

Builder Agreement states that "[t]his agreement . . . is not assignable." [Doc. 69-1, p. 4].

Once again, HHH assigned its right to bring a lawsuit against CECO, not a contract, to

ACC, and ACC purports to bring this lawsuit under an alleged subcontract agreement,

not the Builder Agreement. *See Ultima Real Est. Inv., LLC v. Saddler*, 516 S.E.2d 360, 361

(Ga. Ct. App. 1999) ("The present case deals with an assignment of a cause of action, not

an assignment of a contract."); [Doc. 57, ¶ 62].

Regardless of the complexities of assignment law, CECO has not provided a

convincing argument why it cannot sue HHH under the Builder Agreement's

indemnity provision or other causes of action once this litigation concludes, rather than

trying to offset its damages from ACC. Therefore, the interests of justice do not require

the Court to convert CECO's set-off defense to a counterclaim, and the Court **GRANTS**

ACC's Motion. [Doc. 93]

**CONCLUSION**

Accordingly, the Court **GRANTS** CECO's Motion to Preclude the Admission of

Irrelevant Damages Evidence [Doc. 89] and **GRANTS** ACC's Motion to Preclude

Arguments, Evidence, or Instructions Based on Set-Off and Recoupment [Doc. 93].

**SO ORDERED**, this 1st day of April, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

timely or properly assert set-off and recoupment as counterclaims against HHH; and CECO cannot now change its defenses to counterclaims because justice does not require it—CECO can still sue HHH.